IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-CR-98-JFH |
| BRETT DEWAYNE COLE, | |
| Defendant. | |

## OPINION AND ORDER

Before the Court is a notice of intent to admit evidence of other child molestation ("Notice") filed by the United States of America ("Government"). Dkt. No. 28. Defendant Brett Dewayne Cole ("Defendant") has not filed an objection to the Notice. However, pursuant to binding Tenth Circuit authority, the Court must still fully evaluate the evidence and make a clear record of its reasoning before allowing admission. *United States v. Benally*, 500 F.3d 1085 (10th Cir. 2007). For the reasons stated, the evidence described in the Notice is ADMISSIBLE.

## BACKGROUND

Defendant is charged with three crimes: two (2) counts of aggravated sexual abuse in Indian country and one (1) count of abusive sexual contact in Indian country, all involving the same alleged victim. Dkt. No. 2. The indictment alleges that Defendant, a non-Indian, engaged in sexual acts with K.Z., an Indian who had not attained the age of twelve (12) years, by inserting his penis into her mouth and by inserting his finger into her vagina, and caused sexual contact with K.Z. by placing her hand on his penis. *Id.* The Notice states that Defendant was the step-father of K.Z. and had access to her because they lived in the same residence. Dkt. No. 28 at 13. It also states that K.Z. was ten (10) years old at the time of the charged conduct in 2019. *Id.*

The Notice describes two other alleged victims and an additional witness, all of whom are now adults.  The Notice first describes Defendant's half-sister S.C., who disclosed that Defendant sexually molested her repeatedly when she was between five (5) and ten (10) years old.  It next describes Defendant and S.C.'s brother M.C., who told investigators that he found Defendant and S.C. in rooms alone together repeatedly when S.C. was a minor, including one instance where M.C. walked into a room and saw Defendant zipping up his pants.  Finally, the Notice describes B.E., a step-cousin of Defendant, who told investigators that Defendant touched her genitalia under her clothing twice when she was between the ages of seven (7) and nine (9) years old.  The Government did not initially submit any supporting documentation regarding the reports made by S.C., M.C., and B.E.  The Court invited the Government to supplement its Notice with evidence. Dkt. No. 40.  The Government then provided to the Court five (5) video files and three (3) PDF files.  Dkt. No. 53.

Three of the video files are a recording of an interview between S.C. and McCurtain County Sheriff's Office investigator Larry Hendrix ("Hendrix").  During the interview, S.C. tells Hendrix that Defendant molested her in multiple places when she was a child, including in a tack shop, behind their house, at a relative's house, while trail riding, on a couch, in Defendant's room, and at a baseball dugout.  S.C. said that at various times, Defendant put his fingers in her vagina, put his mouth on her vulva, made her touch his penis with her hands, made her perform oral sex on him, and at least once, put his penis in her vagina.[1]  She also describes remembering it was painful when Defendant penetrated her vagina.

---

[1] Additionally, S.C. describes an instance where Defendant forced her to perform oral sex on another male child.  The Government does not include this reported instance in the Notice.  The Government is cautioned of the need to file a supplemental notice if it desires to introduce any additional evidence which may be described in the evidence submitted as exhibits to the Notice but is not described in the Notice itself.

According to S.C., Defendant would tell her that she would get in trouble if she told anyone about his actions. While she was still in elementary school, S.C. saw a video at school teaching children what to do if they had been abused and encouraging children to talk to a counselor. S.C. tells Hendrix in the interview that she "broke loose" when she saw this video and talked to her teacher and a counselor about Defendant's actions. S.C. also tells Hendrix that after both she and Defendant were adults, she confronted Defendant through Facebook private message about how he had abused her. According to S.C., Defendant replied, apologized, and said he "never should have done it." However, S.C. could not access the messages to provide them to Hendrix because she no longer had access to her Facebook account.

The other two videos are of an interview between M.C. and Hendrix. M.C. tells the investigator that Defendant never physically molested him but that he "really vividly" remembered walking into a shed at their grandparents' house, seeing Defendant and S.C. alone together in the shed, and recognizing that Defendant was zipping up his pants. According to M.C., when he entered the shed, Defendant looked up "like he'd been caught." M.C. estimated that he and S.C. were around five (5) to seven (7) years old at the time and remembered that Defendant told him not to say anything about what he had seen. However, M.C. tells Hendrix that the event "really stuck with him." M.C. also describes to Hendrix that he would often walk into rooms at their home and find that it was "just them," meaning Defendant and S.C., in the room.

Two of the PDF documents submitted by the Government reflect the S.C. and M.C. interviews. One is Hendrix's summary of the interviews. The other is a document on letterhead from the Seventeenth Judicial District's district attorney office seeking additional information on S.C. and another unnamed victim. The last PDF document is a statement signed by Hendrix describing B.E. The document states B.E. reported that Defendant molested her on two separate

occasions when she was between seven (7) and nine (9) years old.  During one instance, Defendant allegedly told B.E. that he had found a good hiding spot during a game of hide and seek.  Once they were in the hiding spot, B.E. said Defendant "touched her vagina under her clothes" and said, "You know you like it."  The other instance occurred when B.E. was sleeping on a sofa.  She told Hendrix that Defendant "came into the room where she was sleeping and again touched her vagina under her clothes."  The report states B.E. told Defendant she was going to "tell" and he replied, "Go ahead[,] no one will believe you."

AUTHORITY AND ANALYSIS

I.   **Rule 413/414**

   A.  *Benally* **Legal Standard**

The Federal Rules of Evidence generally prohibit "the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts." *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007) (citing Fed. R. Evid. 404(a)).  However, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault.  The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a).  "Rule 414(a) contains identical language related to accusations of child molestation." *Benally*, 500 F.3d at 1090.  Because the language and standards are identical, the Court adopts the Tenth Circuit's convention of referencing evidence offered under either of these provisions as "Rule 413/414 evidence." *See id.*

   Rule 413/414 evidence

   > must meet three threshold requirements before it may be considered for admission . . .
   >
   > (1) the defendant is accused of a crime involving sexual assault or child molestation;

4

>    (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation; and
>
>    (3) the evidence is relevant.

*Id.* Once evidence meets *Benally*'s initial requirements, it is still "subject to the Rule 403 balancing test, which permits the exclusion of relevant evidence, if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (internal quotation marks and citation omitted); *see* Fed. R. Evid. 403.

### B. *Benally* Analysis

*Benally* first requires a defendant be accused of a crime involving sexual assault or child molestation. For purposes of Rules 413 & 414, sexual assault is defined in relevant part as "any conduct prohibited by 18 U.S.C. chapter 109A" and child molestation is defined in relevant part as "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child [under the age of 14]." Fed. R. Evid. 413(d)(1); Fed. R. Evid. 414(d)(1)-(2). Here, Defendant is charged with three (3) crimes all codified within chapter 109A. Dkt. No. 2. The first factor is met.

*Benally* next requires that the proffered evidence involves other sexual assault or child molestation. S.C. described Defendant's alleged molestation as him penetrating her vagina with both his penis and his finger, putting his mouth on her vagina, making her put her mouth on his penis, and putting her hand on his penis. All of these are sexual acts and/or sexual contact as defined in 18 U.S.C. § 2246 and prohibited by chapter 109A. The second factor is met.

Finally, *Benally* requires the proffered evidence be relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less than it would be without the evidence." Fed. R. Evid. 401. Relevance of Rule 413/414 evidence is explained by its legislative history, which relied "on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes."

*United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010) (internal quotation marks and citation omitted); *see also* 23 Charles Alan Wright et al., *Fed. Prac. & Proc. Evid.* § 5385 (April 2020 update) ("The legislative history makes clear that the drafters and Congress believed that evidence under Rules 413, 414, and 415 is relevant to prove propensity and that this includes the defendant's propensity to commit sexual assault or child molestation."). The third factor is met.

The *Benally* threshold requirements are satisfied. The Court next turns to Rule 403.

### C. *Enjady* Legal Standard

"[A] district court must recognize the congressional judgment that Rule [413/414] evidence is normally to be admitted." *United States v. Enjady*, 134 F.3d 1427, 1434 (10th Cir. 1988). However, before allowing admission, the district court must "fully evaluate the proffered evidence and make a clear record of the reasoning behind its findings" as to Rule 403 and its required balancing test. *Benally*, 500 F.3d at 1091 (quotation omitted). Rule 403 states that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

To perform Rule 403 balancing in the context of Rule 413/414 evidence, courts weigh: "1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence," against "1) how likely [it is] such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior

conduct." *Enjady*, 134 F.3d at 1433.² No single factor of the *Enjady* test is dispositive. *United States v. Mann*, 193 F.3d 1172, 1175 (10th Cir. 1999).

### D. *Enjady* Analysis of Probative Value

#### 1. How clearly the prior act has been proven

Before considering the other *Enjady* factors, the Court must "make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." *Benally*, 500 F.3d at 1090. Similar acts "must be established by sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Enjady*, 134 F.3d at 1433 (quotation omitted). Non-exhaustive examples of sufficient evidence include police reports, transcribed phone calls, Facebook conversations, interviews of witnesses, FBI 302 interview reports, other written materials such as victim deposition transcripts, and judicial records demonstrating that prior acts of child molestation resulted in guilty pleas and convictions. *See United States v. Nieto Regalado*, No. 19-CR-114, 2019 WL 5783730, at *2 (N.D. Okla. Nov. 6, 2019); *United States v. Perrault*, No. 17-2558, 2019 WL 1332584, at *2 (D.N.M. Mar. 25, 2019); *United States v. Vafeades*, No. 14-CR-153, 2015 WL 9273936, at *4 (D. Utah. Dec. 18, 2015); *United States v. McGirt*, 20-CR-50 at Dkt. No. 86 (E.D. Okla. Oct. 28, 2020).

Here, the Government submitted video interviews of S.C. and M.C., along with police investigative records summarizing reports made by S.C., M.C., and B.E. This evidence is sufficient for the Court to find that a jury could reasonably find by a preponderance that the other alleged child molestation occurred.

---

² The second *Enjady* factor involves five additional subfactors: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Benally*, 500 F.3d at 1090-91.

7

### 2. Factors demonstrating probative value

To fully assess the probative value of Rule 413/414 evidence, courts must consider five additional subfactors: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Batton*, 602 F.3d at 1198.

The prior and charged acts are similar. All of them involve Defendant performing sexual acts and/or causing sexual contact with young girls between the ages of five (5) and ten (10) years old by touching their vulvas, inserting his finger in their vaginas, causing them to put their hands on his penis, and causing them to perform oral sex on him. Additionally, the Government states in the Notice that "abuse of all three minor victims occurred when the Defendant had access and opportunity based upon their familial relationships, whether that was from living with the child or the child visiting." Dkt. No. 28 at 15-16. While S.C. and B.E. are both now grown adults, the Court does not believe the time lapse weighs against probative value, as "similarity of prior acts to the charged offense may outweigh concerns of remoteness in time." *Batton*, 602 F.3d at 1199 (quoting *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997)). Both S.C. and B.E. described repeated behavior by Defendant—although B.E. described only two instances, S.C. described a continuing course of conduct across several years. The Government states the only intervening event was time between the occasions of alleged abuse, which the Court has already considered. And the only evidence beyond Defendant's, S.C.'s, and B.E's testimony that the Government identifies is the testimony of M.C., who was an eyewitness to Defendant zipping up his pants when he had been alone with S.C. All of these factors weigh toward admission.

### 3. How seriously disputed the material fact is

"The more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility." *United States v. Sturm*, 673 F.3d 1274, 1286 (10th Cir. 2012). Here, Defendant's behavior toward K.Z., the named victim in the indictment, is "hotly contested" in the Government's phrasing. Dkt. No. 28 at 16. This weighs toward admission.

### 4. Availability of less prejudicial evidence

The Government states that "Defendant has challenged the credibility of the charged victim's statements. Given that, like most sexual abuse cases, there is no physical evidence to corroborate the victim and these crimes frequently take place in secret without witnesses, there is no less prejudicial method to prove the charged conduct" at the Government's disposal. *Id.* at 16-17. The Court agrees.

All four factors demonstrate that the evidence described in the Government's Notice has probative value favoring admission. This is not the end of the inquiry. The Court must weigh the *Enjady* factors against the unfair prejudice factors to determine if the evidence should ultimately be admitted. *Enjady*, 134 F.3d at 1433.

### E. *Enjady* Analysis of Prejudicial Dangers

### 1. Risk of improperly-based verdict

Should the Rule 413/414 evidence be presented, the Court intends to give a proper limiting instruction if requested. Because jurors are presumed to follow the Court's instructions, the Court finds that the evidence of Defendant's other actions would be unlikely to contribute to an improperly based jury verdict. *See United States v. McHorse*, 179 F.3d 889, 897 (10th Cir. 1999) ("A central assumption of our jurisprudence is that juries follow the instructions they receive.").

2. **Risk of distraction**

Although the Court finds there is some risk that presenting victims of uncharged acts to the jury will distract the jury from considering the central issues at trial, the Court does not find that this risk is severe. Testimony regarding Rule 413/414 evidence may be narrowly tailored to reflect the similarities between Defendant's treatment of K.Z., S.C., and B.E. For the reasons previously discussed, Defendant's alleged conduct toward S.C. and B.E. is relevant to the material issue in the case, and as such, the Court is not concerned that the testimony will be unduly distracting or inflammatory to the jury. Additionally, any risk of jury distraction can be minimized by the limiting instruction and the Government efficiently presenting witness testimony from S.C., M.C., and B.E.

3. **Time considerations**

As discussed above, the Court believes that the strong similarities between the alleged acts may be presented efficiently and through a narrowly tailored line of questioning. Thus, the Court does not find that the Rule 413/414 evidence will be unnecessarily time consuming.

Taken together, the *Enjady* factors demonstrate that the probative value of the evidence described in the Notice is significant and is not substantially outweighed by any of the dangers listed in Rule 403.

## CONCLUSION

IT IS THEREFORE ORDERED that the evidence described in the Government's notice of intent to admit evidence of other child molestation [Dkt. No. 28] is ADMISSIBLE.

DATED this 2nd day of December 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE