## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-CR-98-JFH |
| BRETT DEWAYNE COLE, | |
| Defendant. | |

## OPINION AND ORDER

Before the Court is a response and objection to the Government's notice of intent to admit evidence of other child molestation ("Objection") filed by Defendant Brett Dewayne Cole ("Defendant").  Dkt. No. 65.  The United States of America ("Government") filed a response in opposition.  Dkt. No. 67.  For the reasons stated, the Court VACATES its previous Order on the same evidence, entered December 2, 2022 [Dkt. No. 54]; after full consideration of the record before it, OVERRULES Defendant's Objection; and rules that the evidence described by the Government's notice of intent to admit evidence of other child molestation ("Notice") [Dkt. No. 28] is ADMISSIBLE.

## PROCEDURAL BACKGROUND

Defendant is charged with three crimes:  two (2) counts of aggravated sexual abuse in Indian country and one (1) count of abusive sexual contact in Indian country, all involving the same alleged victim.  Dkt. No. 2.  The indictment alleges that Defendant, a non-Indian, engaged in sexual acts with K.Z., an Indian who had not attained the age of twelve (12) years.  *Id.*  Trial is set for January 3, 2022.

On December 2, 2022, the Court issued an Order on the Government's Notice.  Dkt. No. 28; Dkt. No. 54.  Although Defendant had not responded to the Notice, pursuant to binding Tenth

Circuit authority, the Court fully evaluated the evidence before it and made a record of its reasoning before ruling on the evidence. Dkt. No. 54. The Court ruled that the evidence described in the Notice was admissible, including testimony from Defendant's half-sister S.C., who told investigators that Defendant sexually molested her repeatedly when she was between five (5) and ten (10) years old; testimony from Defendant and S.C.'s brother M.C., who told investigators that he found Defendant and S.C. in rooms alone together repeatedly when S.C. was a minor, including one instance where M.C. walked into a room and saw Defendant zipping up his pants; and testimony from B.E., a step-cousin of Defendant, who told investigators that Defendant touched her genitalia under her clothing twice when she was between seven (7) and nine (9) years old.

On December 16, 2022, defense counsel requested leave to file the Objection out of time. Dkt. No. 63.[1] Counsel explained that "evidence that [Defendant] was a juvenile at the time of the alleged other events was not before the Court in its consideration of the admissibility of the evidence." *Id.* The Court granted Defendant's request [Dkt. No. 64] and Defendant filed his Objection on December 19, 2022 [Dkt. No. 65]. The Court invited a response from the Government [Dkt. No. 66], which the Government provided on December 21, 2022 [Dkt. No. 67].

## FACTUAL BACKGROUND

The Government submitted both video files and PDF files of evidence regarding Defendant's alleged prior child molestation. Dkt. No. 53.

---

[1] Though the Court's scheduling orders are relatively inflexible due to the Court's multi-district caseload, the Court granted Defendant's request for leave to file out of time based on the unique circumstances of this case. Initial defense counsel suffered a serious medical event that required multiple hospitalizations, causing him to be absent from the initial pretrial conference and causing trial to be reset. *See* Dkt. No. 41; Dkt. No. 52. Co-counsel entered an appearance on December 13, 2022 [Dkt. No. 61] and filed his request for leave within the same week [Dkt. No. 63].

First, the Government submitted an interview between S.C. and McCurtain County Sheriff's Office investigator Larry Hendrix ("Hendrix"). During the interview, S.C. tells Hendrix that Defendant molested her in multiple places when she was a child, including in a tack shop, behind their house, at a relative's house, while trail riding, on a couch, in Defendant's room, and at a baseball dugout. S.C. said that at various times, Defendant put his fingers in her vagina, put his mouth on her vulva, made her touch his penis with her hands, made her perform oral sex on him, and at least once, put his penis in her vagina.[2] She also describes remembering it was painful when Defendant penetrated her vagina.

According to S.C., Defendant would tell her that she would get in trouble if she told anyone about his actions. While she was still in elementary school, S.C. saw a video at school teaching children what to do if they had been abused and encouraging children to talk to a counselor. S.C. tells Hendrix in the interview that she "broke loose" when she saw this video and talked to her teacher and a counselor about Defendant's actions. S.C. also tells Hendrix that after both she and Defendant were adults, she confronted Defendant through Facebook private message about how he had abused her. According to S.C., Defendant replied, apologized, and said he "never should have done it." However, S.C. could not access the messages to provide them to Hendrix because she no longer had access to her Facebook account.

Next the Government provided a videoed interview between M.C. and Hendrix. M.C. tells the investigator that Defendant never physically molested him but that he "really vividly" remembered walking into a shed at their grandparents' house, seeing Defendant and S.C. alone

---

[2]  Additionally, S.C. describes an instance where Defendant forced her to perform oral sex on another male child. The Government does not include this reported instance in the Notice. The Government is cautioned of the need to file a supplemental notice if it desires to introduce any additional evidence which may be described in the evidence submitted as exhibits to the Notice but is not described in the Notice itself.

together in the shed, and recognizing that Defendant was zipping up his pants. According to M.C., when he entered the shed, Defendant looked up "like he'd been caught." M.C. estimated that he and S.C. were around five (5) to seven (7) years old at the time and remembered that Defendant told him not to say anything about what he had seen. However, M.C. tells Hendrix that the event "really stuck with him." M.C. also describes to Hendrix that he would often walk into rooms at their home and find that it was "just them," meaning Defendant and S.C., in the room.

Two of the PDF documents submitted by the Government reflect the S.C. and M.C. interviews. One is Hendrix's summary of the interviews. The other is a document on letterhead from the Seventeenth Judicial District's district attorney office seeking additional information on S.C. and another unnamed victim. The last PDF document is a statement signed by Hendrix describing B.E. The document states B.E. reported that Defendant molested her on two separate occasions when she was between seven (7) and nine (9) years old. During one instance, Defendant allegedly told B.E. that he had found a good hiding spot during a game of hide and seek. Once they were in the hiding spot, B.E. said Defendant "touched her vagina under her clothes" and said, "You know you like it." The other instance occurred when B.E. was sleeping on a sofa. She told Hendrix that Defendant "came into the room where she was sleeping and again touched her vagina under her clothes." The report states B.E. told Defendant she was going to "tell" and he replied, "Go ahead[,] no one will believe you."

Defendant did not submit any evidence demonstrating that he was a juvenile himself during these alleged acts; however, for purposes of the Objection only, the Court accepts counsel's representation that Defendant was between the ages of ten (10) and fifteen (15) years old when the alleged acts described by S.C. and B.E. occurred.

4

## AUTHORITY AND ANALYSIS

Defendant claims he was a juvenile between the ages of ten (10) and fifteen (15) years old when the alleged prior acts occurred and argues that the Federal Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. §§ 5031-42 (2006) ("FJDA" or "the Act") bars admission of the past act evidence under the Federal Rules of Evidence ("FRE").  Dkt. No. 65 at 6.  If the Court determines that Defendant's alleged juvenile acts are not barred by the FJDA, Defendant asserts that the prior acts still are not admissible because they "cannot be proven by a preponderance of the evidence, [are] not similar to the alleged acts, []twenty years have passed, [are] likely to confuse and distract the jury, and [] will be time consuming to prove and defend." *Id.*

### I.   Statutory Interpretation of FJDA and FRE

#### A.  Standard for statutory interpretation

"[I]t is our primary task in interpreting statutes to determine congressional intent, using traditional tools of statutory construction." *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009).  "[I]n all cases requiring statutory construction, 'we begin with the plain language of the law.'" *St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773, 776 (10th Cir. 2000). "In so doing, we will assume that Congress's intent is expressed correctly in the ordinary meaning of the words it employs." *Id.* (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). "There is no serious debate about the foundational interpretive principle that courts adhere to ordinary meaning, not literal meaning, when interpreting statutes." *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1825 (2020) (Kavanaugh, J., dissenting).  "When there is a divide between the literal meaning and the ordinary meaning, courts must follow the ordinary meaning." *Id.* at 1826.

**B. Rule 413/414's use of the word "crime"**

The question Defendant presents is straightforward: is a sexual assault or child molestation committed by a juvenile a "crime" for purposes of Federal Rule of Evidence 414? The rule's plain language and the ordinary meaning of the word "crime" answer in the affirmative.

The Federal Rules of Evidence generally prohibit "the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts." *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007) (citing Fed. R. Evid. 404(a)). However, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). "Rule 414(a) contains identical language related to accusations of child molestation." *Benally*, 500 F.3d at 1090. Both rules define their relevant terms:

| "[S]exual assault" means a crime under federal law or under state law (as "state" is defined in 18 U.S.C. § 513) involving: | "[C]hild molestation" means a crime under federal law or under state law (as "state" is defined in 18 U.S.C. § 513) involving: |
|---|---|
| any conduct prohibited by 18 U.S.C. chapter 109A; | any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child; |
| contact, without consent, between any part of the defendant's body—or an object—and another person's genitals or anus; | any conduct prohibited by 18 U.S.C. chapter 110; |
| contact, without consent, between the defendant's genitals or anus and any part of another person's body; | contact between any part of the defendant's body—or an object—and a child's genitals or anus; |
| deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or | contact between the defendant's genitals or anus and any part of a child's body; |
| an attempt or conspiracy to engage in conduct described in [the above] subparagraphs. | deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or |
| | an attempt or conspiracy to engage in conduct described in [the above] subparagraphs. |

Fed. R. Evid. 413(d); Fed. R. Evid. 414(d)(2).  Because the language and standards are identical, the Court adopts the Tenth Circuit's convention of referring to evidence offered under either of these provisions as "Rule 413/414 evidence."  *See Benally*, 500 F.3d at 1090.  Although most of the FRE were developed through Judicial Conference rulemaking, Rules 413 and 414 were developed by Congress itself.  *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997)).  The statutory interpretation principles described above thus apply.

The Court begins with the plain language of Rules 413 and 414.  Each uses the word "crime."  What, then, is the ordinary meaning of the word "crime"?  Black's Law Dictionary provides two definitions:  "an act that the law makes punishable" or "the breach of a legal duty treated as the subject-matter of a criminal proceeding."  CRIME, Black's Law Dictionary (11th ed. 2019).  Other reasonable definitions include without limitation "an act or omission that is punishable as a public offense" or "an act or omission that may be prosecuted by governmental authority."  Consistent across these definitions is the rule that a crime is a prohibited act.  Though various legal consequences may result, prosecution or conviction is not required for the act to be considered criminal.[3]  Crime in its ordinary meaning is an activity, not a consequence.

Rules 413 and 414 use this ordinary meaning.  Each rule defines admissible "crimes" to include a variety of prohibited acts.  Neither rule requires prosecution or conviction of an act. Indeed, the Tenth Circuit has instructed that much of the evidence admitted under Rule 413/414 can and should be of *uncharged* acts.  "Consistent with congressional intent regarding the admission of evidence tending to show the defendant's propensity to commit sexual assault or

---

[3]  Indeed, the Court wonders how criminal charges could be initiated if the criminal character of an act only attached through prosecution and/or conviction.

child molestation, 'courts are to liberally admit evidence of prior uncharged sex offenses.'" *Benally*, 500 F.3d at 1090 (quoting *Meacham*, 115 F.3d at 1492).

This ordinary meaning of "crime" to Rule 413/414 is supported by the congressional record related to Rule 413/414, where lawmakers referred variously to "similar crimes," "prior offenses," "similar acts," and "past conduct of a similar nature" when discussing the breadth of the proposed rules. 140 Cong. Rec. H5437-03, H5437, 1994 WL 374984 (June 29, 1994). Further, some commentators have noted that Rules 413 and 414 were passed without much debate from Congress. *See, e.g.*, Michael S. Ellis, Comment, *The Politics Behind Federal Rules of Evidence 413, 414, and 415*, 38 Santa Clara L. Rev. 961 (1998). Without contested meaning, most would agree the plain and ordinary meaning of the word "crime"—as opposed to a detailed, complex analysis of federal statutory schemes—applies.

Few courts have examined juvenile conduct under Rule 413/414; however, in every case the Court has identified, the evidence has ultimately been admitted after consideration of applicable factors. While the question of whether juvenile acts were "crimes" was not raised in any of these cases, the fact that the courts uniformly applied the plain language of Rule 413/414 to juvenile conduct further supports the Court's conclusion that "crime" as referenced in Rule 413/414 should be given its ordinary meaning.

In *United States v. Willis*, the Tenth Circuit declined to hold that juvenile conduct was per se inadmissible under Rule 413/414 and affirmed admission of evidence related to sexual assault committed while the defendant was a juvenile. 826 F.3d 1265, 1274 (10th Cir. 2016) (citing *United States v. Caplette*, 365 F. App'x 833, 834 (9th Cir. 2010)). In *United States v. LeMay*, the Ninth Circuit affirmed admission of a juvenile rape adjudication based on conduct that occurred when the defendant was twelve (12) years old. 260 F.3d 1018 (9th Cir. 2001). The court recognized the

unique status of propensity evidence in sex-offense cases, which "courts have routinely allowed . . . even while disallowing it in other criminal prosecutions." *Id.* at 1025. After considering various constitutional arguments, the court noted that the "case made use of the prior acts evidence in precisely the manner Congress contemplated." *Id.* at 1028-29. Three district courts have also allowed admission of juvenile sexual behavior under Rule 413/414. *United States v. Begay*, 497 F. Supp. 3d 1025, 1064 (D.N.M. 2020) (citing *LeMay*, 260 F.3d at 1030); *United States v. LaJeunesse*, Criminal No. 09-324, 2010 WL 3862829, at *2 (D. Minn. Sept. 28, 2010); *United States v. James*, No. CR-03-900-PHX-MHM, 2006 WL 8441111, at *6 (D. Ariz. July 12, 2006). Each of these five courts read Rule 413/414's plain language to include juvenile acts. This Court joins them.[4]

### C.  The FJDA's use of the word "crime"

Defendant brings a creative, if legalistic, argument that the FJDA prevents juvenile acts from being categorized as "crimes" under Rule 413/414. The Act defines "juvenile delinquency" as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." 18 U.S.C. § 5031. Defendant relies on the second half of this sentence: "which would have been a crime." But the Act does not itself define the word "crime." And moreover, it itself uses "crime" in its ordinary meaning regarding juvenile behavior:

---

[4]  The Court notes that construing Rule 413/414's "crimes" to include juvenile behavior was not the end of any cited court's analysis and will not be the end of this Court's analysis. "[A] district court must recognize the congressional judgment that Rule [413/414] evidence is normally to be admitted." *United States v. Enjady*, 134 F.3d 1427, 1434 (10th Cir. 1988). However, before allowing admission, the district court must "fully evaluate the proffered evidence and make a clear record of the reasoning behind its findings" as to Rule 403 and its required balancing test. *Benally*, 500 F.3d at 1091 (quotation omitted).

> Whenever a juvenile transferred to district court under this section is not convicted of *the crime upon which the transfer was based* or *another crime which would have warranted transfer* had the juvenile been initially charged with that crime, further proceedings concerning the juvenile shall be conducted pursuant to the provisions of this chapter.

18 U.S.C. § 5032 (emphasis added).  The FJDA does not stand for Defendant's proposed rule that juvenile behavior is categorically exempted from the definition of "crime."

This reading of the FJDA's plain language is supported by Tenth Circuit caselaw, which has routinely referred to juvenile acts as "crime" in its ordinary meaning.  In 1975, the Tenth Circuit acknowledged that "there is a substantive offense" component to the FJDA but stated that "the predominant purpose of the [FJDA] is procedural and remedial."  *United States v. Mechem*, 509 F.2d 1193, 1195-96 (10th Cir. 1975).  In 1990, it characterized the FJDA as providing "special procedures for the prosecution of persons who are juveniles at the time a federal crime is committed."  *United States v. Brian N.*, 900 F.2d 218, 220 (10th Cir. 1990).  In 2006, it began an opinion with a sentence stating the FJDA "requires that a juvenile who has been charged with a crime" under certain conditions be transferred to adult prosecution.  *United States v. David A.*, 436 F.3d 1201, 1203 (10th Cir. 2006).  Other instances of the Tenth Circuit characterizing acts charged under the FJDA as "crime" include a 1997 case where it instructed that in transfer proceedings between juvenile adjudication and adult prosecution, "the court may assume the truth of the government's allegations regarding the defendant's commission of the charged crime," *United States v. Leon D.M.*, 132 F.3d 583, 589-90 (10th Cir. 1997), and a 1999 case describing charged conduct committed by a fifteen-year-old defendant as a crime, *United States v. Anthony Y.*, 172 F.3d 1249, 1254 (10th Cir. 1999).

The Tenth Circuit has repeatedly stated that "juvenile delinquency is an adjudication of status—not a criminal conviction."  *In re Sweeney*, 492 F.3d 1189, 1191 (10th Cir. 2007)

(quotation and citation omitted).  It explained this definition "is consistent with the purpose of the [FJDA], which is 'to remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation." *Id.* (quoting *Brian N.*, 900 F.2d at 220).  Based on this longstanding line of Tenth Circuit caselaw, the Court concludes that the differentiation between juvenile and adult adjudication reflected in the FJDA's clause describing a "violation of a law . . . which would have been a crime if committed by an adult" relates to the procedural and legal consequences to a defendant, not to the underlying act.

Defendant's final argument is that that "'crimes' are public record," while "[a]cts of juvenile delinquency are the opposite."  Dkt. No. 65 at 3.  Two courts have rejected similar arguments.  In *Willis*, the Tenth Circuit explained that the independent-source doctrine may lead to evidence of juvenile malfeasance separate and apart from juvenile records themselves.  826 F.3d at 1275 ("Mr. Willis concedes he disclosed the earlier incidents and thereby gave the federal agents the necessary information to independently investigate the previous assaults and to identify witnesses, even without the use of his juvenile records.  Although use of the records likely simplified the agents' investigation, Mr. Willis cannot demonstrate prejudice resulting from the release of his juvenile records due to his own disclosure of the prior sexual encounters.  *Cf. United States v. Griffin*, 48 F.3d 1147, 1150 (10th Cir. 1995) (holding the independent-source doctrine 'permits the introduction of evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality').")

In *James*, the District of Arizona prohibited admission of documentary records relating to adjudication of the abuse which occurred when the defendant was fifteen but allowed other evidence of those events.  *Compare* 2006 WL 8441111 at *7 ("[A]s noted above, the juvenile

records relating to the Defendant's uncounseled plea regarding the First Offense will not be permitted into evidence.  Juvenile records regarding the Second Offense will be permitted to demonstrate the Defendant's adjudication.") *with id.* ("In reviewing the relevant factors and balancing the probative value of the prior Offenses to the instant charges and the prejudicial effect from introducing the Offenses it is apparent at this point, that Defendant's prior Offenses are relevant and admissible pursuant to Rule 413 and 414.  Moreover, the prior Offenses are admissible under a Rule 404(b) analysis as well.  Thus, the Government will be permitted to introduce evidence regarding the Defendant's commissions of these prior Offenses in its prosecution of the charged conduct.").

The Court recognizes that the Northern District of Oklahoma concluded differently and held that the FJDA does bar admission of juvenile acts under Rule 413/414.  *United States v. Goodin*, Case No. 20-CR-181-GKF, Dkt. No. 104 (N.D. Okla., Apr. 6, 2021).  While the Court appreciates and respects the analysis of its colleague, it believes there are three fatal flaws to the *Goodin* analysis.

First, the *Goodin* Court reached its conclusion by comparing the word "crime" across Rule 413/414 and the FJDA.  *See, e.g., id.* at 5 ("The plaintiff offers no examples—under federal or state law—in which an eleven-year-old has been charged with a *crime* of child molestation." (emphasis in original)).  This interpretation gives undue weight to the literal meaning of the final clause of Defendant's cited sentence while ignoring the ordinary meaning and plain language of the Federal Rules of Evidence and the rest of the FJDA discussed above.  As Justice Kavanaugh explained, "A statutory ban on 'vehicles in the park' would literally encompass a baby stroller. But no good judge would interpret the statute that way because the word 'vehicle,' in its ordinary meaning, does not encompass baby strollers."  *Bostock*, 140 S. Ct. at 1825 (Kavanaugh, J.,

dissenting).  Although an act which qualifies as juvenile delinquency under the FJDA is literally exempted from federal criminal prosecution by Defendant's cited clause, it is certainly crime in its ordinary meaning.  No reasonable person would say that a juvenile who forcibly removed money from a bank, caused the unjustified homicide of another, or (most relevant to this case) forcibly sexually penetrated another individual did not commit a crime in its ordinary meaning of an act that the law makes punishable.

Second, the *Goodin* Court's holding was unnecessarily broad.  It held "that the term 'crime' as used in Federal Rule of Evidence 414(d)(2), does not encompass acts of juvenile delinquency." *Id.* at 6. However, it acknowledged that "the government's proffered evidence is not of an offense for which the defendant could have been tried as an adult" and noted that it was not presented with the question of "whether an act which *could* be brought against a juvenile as an adult is a 'crime' for purposes of Rule 414."  *Id.* at 6 n.4.  The Court believes this is an artificial distinction not merited by the plain language of either the FJDA or the FRE.

Third, the *Goodin* Court's analysis taken to its logical conclusion would require the Court to examine the prosecutorial history of a juvenile act to determine admissibility under Rule 413/414.  The Court would need to ask whether the juvenile act was, or at least could have been, the foundation of adult criminal charges.  But this is not required or invited by the Federal Rules of Evidence.  Prosecutorial status is not determinative—or even relevant—to admission under Rule 413/414.  The Tenth Circuit has stated that "*clearly* under Rule 414 the courts are to '*liberally*' admit evidence of prior *uncharged* sex offenses."  *Meacham*, 115 F.3d at 1492 (emphasis added). The historical notes to Rule 413 instruct, "To implement the legislative intent, the courts must liberally construe these rules to provide the basis for a fully informed decision of sexual assault and child molestation cases, including assessment of the defendant's propensities and questions of

probability in light of the defendant's past conduct." *Id.* (quoting Fed. R. Evid. 413 Historical Notes (quoting 140 Cong. Rec. H8991–92 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari))).

The Court reads the plain language of the FJDA and Rule 413/414 to use the word "crime" in its ordinary meaning of "an act that the law makes punishable." CRIME, Black's Law Dictionary (11th ed. 2019). The type of procedural mechanism for punishment, whether an adjudication of juvenile delinquency or adult criminal prosecution, is not determinative. The Court rejects Defendant's argument that the FJDA prevents admission under Rule 413/414 of sexual assault and child molestation committed by a defendant while he or she was a juvenile.

## II.   Rule 414 Analysis

The Court previously analyzed the Government's proffered evidence under the Tenth Circuit's multi-pronged balancing test for Rule 413/414 evidence. However, Defendant's juvenile status was not before the Court at that time. The Court therefore vacates its previous Order and repeats the requisite analysis with all facts and evidence currently before it.

### A. *Benally* legal standard

Rule 413/414 evidence

> must meet three threshold requirements before it may be considered for admission . . .
>
> (1) the defendant is accused of a crime involving sexual assault or child molestation;
>
> (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation; and
>
> (3) the evidence is relevant.

*Benally*, 500 F.3d at 1090. Once evidence meets *Benally*'s initial requirements, it is still "subject to the Rule 403 balancing test, which permits the exclusion of relevant evidence, if its probative

value is substantially outweighed by the danger of unfair prejudice." *Id.* (internal quotation marks and citation omitted); *see* Fed. R. Evid. 403.

### B. *Benally* analysis

*Benally* first requires a defendant be accused of a crime involving sexual assault or child molestation. For purposes of Rules 413 & 414, sexual assault is defined in relevant part as "any conduct prohibited by 18 U.S.C. chapter 109A" and child molestation is defined in relevant part as "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child [under the age of fourteen (14)]." Fed. R. Evid. 413(d)(1); Fed. R. Evid. 414(d)(1)-(2). Here, Defendant is charged with three (3) crimes all codified within chapter 109A. Dkt. No. 2. The first factor is met.

*Benally* next requires that the proffered evidence involves a crime of sexual assault or child molestation. The Court has already concluded that the evidence need only be of a criminal act, not of a criminal charge. Therefore, the Court focuses on Defendant's alleged acts, not his own minority at the time of the alleged conduct. S.C. described Defendant's alleged molestation as him penetrating her vagina with both his penis and his finger, putting his mouth on her vagina, making her put her mouth on his penis, and putting her hand on his penis when she was between five (5) and ten (10) years old. B.E. told investigators that Defendant touched her genitalia under her clothing twice when she was between the ages of seven (7) and nine (9) years old. All of these are sexual acts and/or sexual contact as defined in 18 U.S.C. § 2246 and prohibited by chapter 109A. Because both S.C. and B.E. were under the age of fourteen (14) years, these qualify as acts of child molestation despite Defendant's juvenile status at the time. The second factor is met.

Finally, *Benally* requires the proffered evidence be relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less than it would be without the evidence." Fed. R. Evid. 401. Relevance

of Rule 413/414 evidence is explained by its legislative history, which relied "on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes." *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010) (internal quotation marks and citation omitted); *see also* 23 Charles Alan Wright et al., *Fed. Prac. & Proc. Evid.* § 5385 (April 2020 update) ("The legislative history makes clear that the drafters and Congress believed that evidence under Rules 413, 414, and 415 is relevant to prove propensity and that this includes the defendant's propensity to commit sexual assault or child molestation."). The third factor is met.

The *Benally* threshold requirements are satisfied. The Court next turns to Rule 403.

### C. *Enjady* legal standard

As the Court previously noted, *see supra* n.3, it "must recognize the congressional judgment that Rule [413/414] evidence is normally to be admitted," *Enjady*, 134 F.3d at 1434, but must "fully evaluate the proffered evidence and make a clear record of the reasoning behind its findings" as to Rule 403 and its required balancing test, *Benally*, 500 F.3d at 1091 (quotation omitted).

Rule 403 states that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. To perform Rule 403 balancing in the context of Rule 413/414 evidence, courts weigh: "1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence," against "1) how likely [it is] such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time

consuming it will be to prove the prior conduct." *Enjady*, 134 F.3d at 1433.[5]  No single factor of the *Enjady* test is dispositive.  *United States v. Mann*, 193 F.3d 1172, 1175 (10th Cir. 1999).

### D.  *Enjady* analysis of probative value

#### 1.  How clearly the prior act has been proven

The Court must "make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." *Benally*, 500 F.3d at 1090.  Similar acts "must be established by sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Enjady*, 134 F.3d at 1433 (quotation omitted).  Non-exhaustive examples of sufficient evidence include police reports, transcribed phone calls, Facebook conversations, interviews of witnesses, FBI 302 interview reports, other written materials such as victim deposition transcripts, and judicial records demonstrating that prior acts of child molestation resulted in guilty pleas and convictions.  *See United States v. Nieto Regalado*, No. 19-CR-114, 2019 WL 5783730, at *2 (N.D. Okla. Nov. 6, 2019); *United States v. Perrault*, No. 17-2558, 2019 WL 1332584, at *2 (D.N.M. Mar. 25, 2019); *United States v. Vafeades*, No. 14-CR-153, 2015 WL 9273936, at *4 (D. Utah. Dec. 18, 2015); *United States v. McGirt*, 20-CR-50 at Dkt. No. 86 (E.D. Okla. Oct. 28, 2020).

Here, the Government submitted video interviews of S.C. and M.C., along with police investigative records summarizing reports made by S.C., M.C., and B.E.  Consistent with other district courts in the Tenth Circuit, the Court concludes this evidence is sufficient to find that a jury could reasonably find by a preponderance that the other alleged child molestation occurred.

---

[5]  The second *Enjady* factor involves five additional subfactors:  "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony."  *Benally*, 500 F.3d at 1090-91.

Defendant claims without authority that a jury could not find the acts happened by a preponderance of the evidence because the allegations are stale, with alleged conduct occurring approximately twenty (20) years ago and going unreported until 2019 for S.C. and 2022 for B.E. However, Rule 413/414 evidence is not subject to exclusion for staleness. Rather, "[n]o time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, *evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time* in relation to the charged offense or offenses." *Meacham*, 115 F.3d at 1492 (emphasis added) (quoting Fed. R. Evid. 413 Historical Notes (quoting 140 Cong. Rec. H8991–92 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari))).

## 2. Factors demonstrating probative value

To fully assess the probative value of Rule 413/414 evidence, courts must consider five additional subfactors: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Batton*, 602 F.3d at 1198.

Defendant challenges the similarity of the acts because he claims that "[t]wo juveniles playing doctor is a far cry from an adult touching a juvenile." Dkt. No. 65 at 5. But the conduct described in the Notice is itself a far cry from playing doctor. All of them involve Defendant performing sexual acts and/or causing sexual contact with young girls between the ages of five (5) and ten (10) years old by touching their vulvas, inserting his finger in their vaginas, causing them to put their hands on his penis, and causing them to perform oral sex on him. The Court rejects Defendant's assertion that the behaviors describe by S.C. and B.E."[do] not show that [Defendant] had a sexual interest in children that ordinary people do not manifest" and instead only "shows an

adolescent [who] was curious about other people's bodies." *Id.* at 6.   The described behavior goes far beyond anatomical exploration and falls squarely within the realm of sexual gratification.   The methods Defendant allegedly used to derive sexual gratification are similar across both the charged victims and the 414 victims.   Additionally, the Government highlights that "abuse of all three minor victims occurred when the Defendant had access and opportunity based upon their familial relationships, whether that was from living with the child or the child visiting." Dkt. No. 28 at 15-16.   There is sufficient similarity to weigh in favor of probative value.

Defendant next challenges the time lapse between the conduct described by S.C. and B.E. and the charged conduct.   Dkt. No. 65 at 5.   The Court acknowledges that twenty (20) years is a long duration.   However, the Court does not believe the time lapse weighs against probative value, as "similarity of prior acts to the charged offense may outweigh concerns of remoteness in time." *Batton*, 602 F.3d at 1199 (quoting *Meacham*, 115 F.3d at 1495).

Defendant argues that the Notice does not specify whether the alleged acts against S.C. occurred on the same or separate occasions.   However, it is clear from the video interview of S.C. that there were multiple occasions, as she described alleged acts by the Defendant occurring in a tack shop, behind their house, at a relative's house, while trail riding, on a couch, in Defendant's room, and at a baseball dugout.   Defendant concedes that the Notice alleges two acts against B.E. These weigh toward probative value.

While the Government states the only intervening event was time between the occasions of alleged abuse, Defendant alleges there were many intervening events, including adulthood, marriage, fatherhood, employment, and heavy equipment operation.   Dkt. No. 65 at 5.   The Court accepts Defendant's allegation.   The intervening events weigh against probative value.

Finally, Defendant argues prior act evidence is not needed because both the alleged victim and an expert witness will testify.  However, child molestation cases "require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration.  In such cases, there is a compelling public interest in admitting all significant evidence that will illumine the credibility of the charge and any denial by the defense."  *United States v. Charley*, 189 F.3d 1251, 1260 (10th Cir. 1999) (quotation omitted).  This weighs toward probative value.

Although one factor is neutral and one factor weighs against probative value, three factors clearly weigh in favor of probative value.  Those factors—the similarity of the charged acts, the continuing course of conduct, and the compelling public interest in admitting all significant evidence in a child molestation case—outweigh the others.

### 3.   How seriously disputed the material fact is

Defendant does not challenge the Court's earlier conclusion on this factor.  "The more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility." *United States v. Sturm*, 673 F.3d 1274, 1286 (10th Cir. 2012).  Here, Defendant's behavior toward K.Z., the named victim in the indictment, is "hotly contested" in the Government's phrasing.  Dkt. No. 28 at 16.  This weighs toward admission.

### 4.   Availability of less prejudicial evidence

Again, Defendant does not challenge the Court's earlier conclusion here.  The Government states that "Defendant has challenged the credibility of the charged victim's statements.  Given that, like most sexual abuse cases, there is no physical evidence to corroborate the victim and these crimes frequently take place in secret without witnesses, there is no less prejudicial method to prove the charged conduct" at the Government's disposal.  *Id.* at 16-17.  The Court agrees.

All four factors demonstrate that the evidence described in the Government's Notice has probative value favoring admission.  This is not the end of the inquiry.  The Court must weigh the *Enjady* factors against the unfair prejudice factors to determine if the evidence should ultimately be admitted.  *Enjady*, 134 F.3d at 1433.

### E.  Enjady risk of prejudicial dangers

#### 1.  Risk of improperly-based verdict

Defendant argues that the Government will improperly "assert that because [he] was alleged to have done it before then he must have done it this time," "will cause the jury to believe that [he] got away with it before," and will influence the jury to feel "a greater responsibility to convict him."  Dkt. No. 65 at 6.  These are not convincing.  True, the Government likely will allege that because Defendant did it before, he did it again.  But that is the purpose behind Rule 413/414 evidence and its unique exception to the general rule against propensity evidence.  Regarding Defendant's concerns that the jury will believe he "got away with it before" and will feel "a greater responsibility to convict him," the Court intends to give proper limiting instructions that the jury is to consider the prior act evidence only for proper purposes and is not to consider punishment during its deliberations.  Because jurors are presumed to follow the Court's instructions, the Court finds that the evidence of Defendant's other actions would be unlikely to contribute to an improperly based jury verdict.  *See United States v. McHorse*, 179 F.3d 889, 897 (10th Cir. 1999) ("A central assumption of our jurisprudence is that juries follow the instructions they receive.").

#### 2.  Risk of distraction

Defendant alleges he will have to call witnesses and present evidence to dispute both the charged acts and the prior acts, which will distract and confuse the jury.  Dkt. No. 65 at 6.  The Court does find that there is some risk of distraction.  However, the Court does not find that this

risk is severe.  Testimony regarding Rule 413/414 evidence may be narrowly tailored to reflect the similarities between Defendant's treatment of K.Z., S.C., and B.E.  For the reasons previously discussed, Defendant's alleged conduct toward S.C. and B.E. is relevant to the material issue in the case, and as such, the Court is not concerned that the testimony will be unduly distracting or inflammatory to the jury.  Additionally, any risk of jury distraction and confusion can be minimized by limiting instructions and the Government efficiently presenting witness testimony from S.C., M.C., and B.E.

### 3.  Time considerations

Defendant asserts that the prior act evidence will be time consuming.  *Id.* at 6.  However, as previously discussed, the Court believes that the strong similarities between the alleged acts may be presented efficiently and through a narrowly tailored line of questioning.  Thus, the Court does not find that the Rule 413/414 evidence will be unnecessarily time consuming.

Taken together, the standard *Enjady* factors demonstrate that the probative value of the evidence described in the Notice is significant and is not substantially outweighed by any of the dangers listed in Rule 403.  However, the Court additionally considers Defendant's juvenile status at the time of the alleged prior acts.

### F.  Defendant's juvenile status

"[T]he mere fact" that a defendant "was a minor at the time of his alleged [prior] sexual assaults" does not automatically outweigh other factors which may show probative value of the evidence.  *Willis*, 826 F.3d at 1274.

In *Willis*, the Tenth Circuit affirmed admission of evidence related to the defendant's juvenile sexual assault because "the prior-acts evidence demonstrated a propensity that was directly relevant to the only issue for the jury to decide," "the material fact . . . was hotly disputed,"

the prior-acts victims were of similar ages and relationships to Defendant as the charged conduct victim, the acts were "quite similar" in multiple ways, a five-year time lapse did not negate the probative value of the prior assaults, and the defendant's juvenile status did not conclusively outweigh these factors.  826 F.3d at 1273-74.  Similarly, the Ninth Circuit affirmed admission of juvenile behavior in *LeMay* where the prior acts were "very similar" to the charged conduct in the type of sexual acts the defendant forced on the victims as well as the ages and relationships of the victims to the defendant, the prior acts evidence "was relevant to bolster the credibility of the victims," and the "case made use of the prior acts evidence in precisely the manner Congress contemplated."  260 F.3d at 1028-29.

In *Begay*, the District of New Mexico concluded "that [defendant] was a juvenile when he committed four of the five alleged prior acts does not alter the result [of *Benally* and *Enjady* weighing], provided that the other [R]ule 414 factors are satisfied."  497 F. Supp. 3d at 1064 (citing *LeMay*, 260 F.3d at 1030).  In *LaJeunesse*, the court concluded the evidence "demonstrate[d] a pattern of sexual abuse" of similar victims in similar ways by the defendant and a ten-year time lapse between the juvenile adjudication and charged conduct "dilute[d]" but did not outweigh its probative value.  2010 WL 3862829 at *2.  And in *James*, the court ruled that the "prior [o]ffenses [were] clearly helpful and/or practically necessary," were "no more prejudicial than the charged acts" when "taken in context of the current charged sexual acts also involving minors," and "possess[ed] significant probative value."  2006 WL 8441111 at *6.

The Court concludes that here Defendant's juvenile status dilutes but does not outweigh the significant probative value of the evidence for the same reasons described by the *Willis*, *LeMay*, *Begay*, *LaJeunesse*, and *James* courts.  As the Court has already concluded, the pattern of behavior is similar across the prior and currently charged acts; Defendant's alleged juvenile behavior far

exceeded "playing doctor" and involved multiple types of sexual penetration; all three alleged victims were in close familial and/or same-household relationships with Defendant; the material issues are hotly contested; the Government's case-in-chief largely comes down to a credibility contest between a minor female and her adult step-father; admission of the evidence follows Tenth Circuit and congressional instructions on this type of evidence; and risks of jury confusion or wasted time can be mitigated by limiting instructions.

The evidence described in the Government's Notice is ADMISSIBLE under Rule 414.

## III.    Rule 404(b)

Alternatively, even if the evidence were not admissible under Rule 414, it would be admissible under Rule 404(b), which provides in pertinent part:

> Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.…
>
> This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).  There are four factors to assess admissibility under 404(b):  (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) whether the probative value of the evidence is substantially outweighed by the prejudicial effect, and (4) the availability of a limiting instruction.  *Huddleston v. United States*, 485 U.S. 681, 691 (1988); *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

Two initial definitions are useful.  Regarding the second factor, Rule 401 defines relevant evidence as having "any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."  Fed. R. Evid. 401. And regarding the third factor, "[e]vidence is not unfairly prejudicial simply because it is damaging to [a party's] case."  *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation

omitted).  Rather, it must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Id.*  In other words, evidence is unfairly prejudicial if it "tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocense [sic] of the crime charged."  *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (emphasis in original) (quotation omitted).  "In weighing the probative value of evidence against unfair prejudice, district courts must give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."  *Murry*, 31 F.4th at 1291 (internal quotations omitted).

Defendant did not challenge admissibility under Rule 404(b) in his Objection.  Dkt. No. 65.  Nevertheless, the Court will evaluate the *Huddleston* factors.

As to the first factor, the Government described three proper 404(b) purposes for the evidence in the Notice:

> Proof of motive (the defendant sexually abused his victims for his sexual gratification), intent (the defendant waited until he was alone with his victims so that he could sexually abuse them in secret and the defendant purposely chose young children who would be either unable[] or reluctant to disclose due to their ages), and absence of mistake or accident (he purposefully sexually abused victims of a similar age and in a similar manner).

Dkt. No. 28 at 20-21.

As to the second factor, the Court has already thoroughly discussed the emphatic congressional conclusion that prior child molestation evidence has relevance in child molestation trials.

As to the third factor, the Court adopts the reasoning of the *James* court, which concluded that evidence of juvenile child molestation was "no more prejudicial than the charged acts" when "taken in context of the current charged sexual acts also involving minors."  2006 WL 8441111 at *6.  While child sexual abuse evidence undeniably may provoke strong emotions in listeners, its

emotional impact is central to the alleged wrongdoing.  The Court cannot conclude that the evidence would "affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocense [sic] of the crime charged."  *Ford*, 613 F.3d at 1268.

Finally, the Court will issue a limiting instruction if requested.

All four *Huddleston* factors weigh toward admission.  Even if the evidence described in the Government's Notice were not admissible under Rule 414, it would be admissible under Rule 404(b).

## CONCLUSION

IT IS THEREFORE ORDERED that the Court VACATES its previous Order on 414 evidence at Dkt. No. 54.  This Order shall control.

IT IS FURTHER ORDERED that Defendant's response and objection to the Government's notice of intent to admit evidence of other child molestation at Dkt. No. 65 is OVERRULED.

IT IS FURTHER ORDERED that the evidence described in the Government's notice of intent to admit evidence of other child molestation [Dkt. No. 28] is ADMISSIBLE.

DATED this 29th day of December 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE